ROBERT A. CHAISSON, Judge.
lain this appeal, Roddrick A. Petty, challenges the sufficiency of the evidence used *619 to convict him of conspiracy to commit armed robbery and second degree murder, as well as the sentences imposed for those convictions. For the reasons set forth herein, we affirm the defendant’s convictions and sentences.

STATEMENT OF THE CASE

On May 13, 2010, a Jefferson Parish Grand Jury returned an indictment charging the defendant, Roddrick A. Petty, and two co-defendants with conspiracy to commit armed robbery, in violation of LSA-R.S. 14:26:64, and second degree murder, in violation of LSA-R.S. 14:3o.!.[1] At his arraignment on May 14, 2010, the defendant pled not guilty to the charges. On October 25, 2011, the trial commenced, and on October 27, 2011, a twelve-person jury found the defendant guilty as charged.
IsOn October 31, 2011, the defendant filed motions for new trial and post-verdict judgment of acquittal alleging that the verdict was contrary to the law and the evidence. After a hearing on November 8, 2011, the trial court denied the motions and thereafter sentenced the defendant to consecutive terms of forty years at hard labor without benefit of parole, probation, or suspension of sentence for conspiracy to commit armed robbery, and life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for second degree murder. The defendant thereafter filed a motion to reconsider sentence which was denied by the trial judge. The defendant now appeals.

FACTS

On the night of January 2, 2010, Mr. Curtis Webber was sitting in his car in his driveway on Avondale Garden Road when he observed a vehicle parked on Center Street, which is the street behind his house. Suspecting that the vehicle might be dumping trash, Mr. Webber decided to drive around the block to see what the vehicle was doing. When Mr. Webber approached, the individual in the vehicle responded that he was just waiting for his friend to jump his vehicle. Mr. Webber accepted that as believable and returned to his driveway. Minutes later, he observed a white vehicle pull nose-to-nose with the vehicle that was already parked on Center Street. Mr. Webber observed individuals exit both vehicles; then, almost immediately, he heard two gunshots ring out. Both vehicles fled the scene in the direction of U.S. Highway 90. Mr. Webber called 911. Police officers responded but were unable to locate any evidence of gunfire that night.
At approximately 8:00 a.m. the next morning, police received another 911 call reporting the discovery of a body on Center Street. Upon arrival at the scene, Detective Brett Beavers of the Jefferson Parish Sheriffs Office Homicide Division found the body of Cletis Jessie, Jr. (hereinafter “the victim”), lying on his |4back on Center Street in an open field next to a graveyard. According to Detective Beavers, the victim had a sucker stick in his mouth, his clothing was clean, and the area surrounding the body was relatively pristine.
Later that evening, the victim’s vehicle, a Ford Thunderbird, was discovered about ten and a half miles away from the murder scene in a wooded area in the rear of a subdivision called Orleans Village, off Sau-vage Road, in Marrero, Louisiana.[2] Upon inspecting the vehicle, Detective Beavers *620 observed that someone had attempted to strip the vehicle of the tires and the stereo system. At trial, Detective Beavers remarked that the condition of the vehicle indicated that someone wanted the victim’s possessions. He further testified that a gardener’s glove was found on the ground by the vehicle, and that DNA swabs were taken from the glove as well as the victim’s steering wheel.
As part of their homicide investigation, the police also spoke to the victim’s parents. At trial, Ms. Ann Jessie, the victim’s mother, testified that on the night of the murder, her son received a phone call from Jeremy Turner, a close family friend.[3] After this phone call, the victim told his mother that Jeremy Turner’s car broke down, and it needed a jump. The victim thereafter left his house to give Turner a jump.
As a result of conversations with the victim’s parents, the police developed Jeremy Turner as a suspect. After conducting interviews with Jeremy Turner, the police obtained arrest warrants for Danarius Meredith and Roddrick Petty, as well as a search warrant for Meredith’s residence. When the police officers went to the residence to conduct the search, Danarius Meredith and the defendant were located | .¡together inside one of the bedrooms. In the closet of that bedroom, live ammunition was discovered; however, no weapon was ever recovered in connection with the murder. The defendant was thereafter arrested and brought to the detective bureau. After being advised of his rights and waiving them, the defendant gave a statement to Detective Beavers admitting his involvement in the murder.
In his statement, given at approximately 9:00 a.m. on January 12, 2010, at the detective bureau, the defendant stated that around 9:30 or 10:00 p.m. on January 2, 2010, he was visiting a female friend in Avondale when Meredith called and asked him to take a ride. Meredith, accompanied by Jeremy Turner and another individual named Jay, picked the defendant up, “took off and found dope,” and then dropped Jay off. The three individuals then proceeded to Avondale Garden Road, and after a few minutes, “the dude come pull up.” At that point, Turner exited his vehicle, briefly talked with the victim, and then the two began wrestling. As soon as they started wrestling, the defendant jumped out of the back seat of Turner’s car, entered the victim’s car, and searched under the front seats. Meredith then exited Turner’s vehicle and joined Turner in fighting with the victim. Turner returned to his vehicle. While Meredith and the victim were still fighting, Meredith fired two shots at the victim. Meredith then got back in the vehicle with Turner, and the defendant remained in the victim’s vehicle. Turner told the defendant to drive the vehicle to the rear of Orleans Village and meet him there. When they got there, the defendant asked Turner to bring him home. Turner brought the defendant and Meredith back to Meredith’s house.
In his statement, the defendant admitted that he knew Turner and Meredith’s plan to rob or “jack” the victim by virtue of an overheard conversation. According to the defendant, as a result of a phone call made by Turner, the defendant | (¡overheard somebody tell Turner to search the victim’s car, but not to kill him.[4] *621 The defendant also admitted in his statement that Turner’s vehicle was never in need of a jump. During his first statement, the defendant was shown two photographic lineups, in which he identified Jeremy Turner and Danarius Meredith.
At trial, the State also presented expert testimony. Dr. Susan Garcia, a forensic pathologist for the Jefferson Parish Forensic Center and an expert in forensic pathology, testified she performed an autopsy on the victim and determined that the cause of death was two intermediate gunshot wounds to the anterior face. She also testified that based upon the stippling and faint areas of smoke, she was able to determine that the weapon was discharged from within one to three feet, but more likely closer to one foot, from the victim. She also testified that when the coroner’s office received the victim’s body, a sucker stick was protruding from his mouth, and further no defensive wounds were found on the victim’s body.
Deputy Jene Rauch of the Jefferson Parish Sheriffs Office, an expert in firearm and tool mark examination, testified that she examined the two copper projectile jackets recovered from the scene and determined that they were fired from the same weapon.
Ms. Adriana Perez of the Jefferson Parish Sheriffs Office Crime Lab, an expert in the field of forensic DNA analysis, testified that she examined the DNA that was recovered from the steering wheel of the victim’s car and concluded that the defendant, the victim, and Danarius Meredith could not be excluded as the donors, but that 99% of the population could be excluded.
i sufficiency of the evidence
In his first assigned error, the defendant challenges the sufficiency of the evidence used to convict him of conspiracy to commit an armed robbery and second degree murder.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

Conspiracy to Commit Armed Robbery

In the instant case, the defendant was charged with and convicted of conspiracy to commit armed robbery. In particular, count one of the amended bill alleged that on January 2, 2010, the defendant, along with co-defendants Jeremy Turner and Danarius Meredith, knowingly and inten *622 tionally combined, conspired, and agreed together to commit armed robbery of the victim, Cletis Jessie, Jr., in violation of LSA-R.S. 14:26:64. The bill further alleged that, in furtherance of this ^conspiracy, the defendant, along -with his co-defendants, committed the following overt acts:
1. On or about the 2nd day of January, 2010, in the Parish of Jefferson, Jeremy Turner placed a telephone call from cell phone number 504-416-6809 to Cletis Jessie, Jr.’s cell phone number 504-237-6737 and asked Jessie to meet him (Turner) in the 200 block of Center Parkway in Avondale.
2. On or about the 2nd day of January, 2010, in the Parish of Jefferson, Danari-us R. Meredith, Roddrick A. Petty, and Jeremy Turner met with the victim, Cletis Jessie, Jr., who arrived in his car as a result of the phone call mentioned in overt act 1.
3. On or about the 2nd day of January, 2010, in the Parish of Jefferson, Danari-us R. Meredith, Roddrick A. Petty and Jeremy Turner stole the victim’s vehicle and caused his death by shooting him twice in the face.
Criminal conspiracy is defined by LSA-R.S. 14:26(A) as:
[T]he agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
The elements of the crime of conspiracy are: (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. State v. Tatum, 09-1004 (La.App. 5 Cir. 5/25/10), 40 So.3d 1082, 1089. LSA-R.S. 14:64 defines armed robbery as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.”
On appeal, the defendant alleges that the evidence was insufficient to support his conviction for conspiracy to commit armed robbery because he did not have the requisite criminal intent.
 |9The first element of conspiracy requires specific intent, which is defined as the “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). The determination of specific criminal intent is a question of fact and may be inferred from circumstances and actions of the defendant. Proof of a conspiracy may be made by direct or circumstantial evidence. State v. Zeno, 99-69 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, 704, writ denied, 00-105 (La.6/30/00), 765 So.2d 1065.
The second element of a criminal conspiracy, the overt act, need not be unlawful. It may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. State v. Jackson, 00-221 (La.App. 5 Cir. 3/15/01), 783 So.2d 482, 487, writs denied, 01-1071 (La.5/9/03), 843 So.2d 385, and 01-1258 (La.5/9/03), 843 So.2d 386.
In State v. Valrie, 99-226 (La.App. 3 Cir. 10/13/99), 749 So.2d 11, 15, unit denied, 99-3236 (La.4/20/00), 760 So.2d 343, the Third Circuit found that the actions of the defendant before and after the armed *623 robbery were sufficient to enable the trier of fact to infer the specific intent necessary to prove a conspiracy. In that case, the evidence indicated the defendant waited in a getaway vehicle while his accomplice held up a bank, and then drove away at high speeds to avoid capture. Additionally, the defendant’s fingerprint was found on the magazine of the gun used in the robbery.
Likewise, in the instant case, we find that the evidence presented by the State at trial was sufficient to prove that the defendant was guilty of conspiracy to commit armed robbery. The defendant admitted knowing prior to the victim’s arrival that it was the intention of Turner and Meredith to rob him. Despite knowing this, the defendant chose to remain with his accomplices. When the |lnvictim arrived and was confronted by Turner and Meredith, the defendant entered the victim’s vehicle and searched for anything of value. Then, after the victim was shot, the defendant drove the victim’s vehicle to a secluded area, where the vehicle was attempted to be further stripped of anything of value. Additionally, the DNA evidence revealed that the defendant could not be excluded as the donor of the DNA that was recovered from the steering wheel of the victim’s car.
Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the defendant entered into an agreement to commit armed robbery and committed an overt act in furtherance of the conspiracy.

Second Degree Murder

The defendant was also charged with and convicted of second degree murder. That offense is defined by LSA-R.S. 14:30.1(A) as the killing of a human being: 1) when the offender has a specific intent to kill or to inflict great bodily harm; or 2) when the offender is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including armed robbery. One need not possess specific intent to kill or inflict great bodily harm to be a principal to a second degree felony murder. State v. Gurganus, 03-992 (La.App. 5 Cir. 12/30/03), 864 So.2d 771, 775, writ denied, 04-0254 (La.6/4/04), 876 So.2d 75. Rather, under the felony murder doctrine, the State need only prove the commission of the underlying felony or the attempt thereof. State v. Lewis, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 590, writ denied, 06-0757 (La.12/15/06), 944 So.2d 1277.
The evidence in this case indicates that the defendant was not armed with a weapon and was not the shooter. LSA-R.S. 14:24 provides: “[A]ll persons concerned in the commission of a crime, whether present or absent, and whether | nthey directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” Only those persons who knowingly participate in the planning or execution of a crime are principals to that crime. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state, and the mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime. However, it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s intention. State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 449, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299.
*624 In State v. Gurganus, 864 So.2d at 777, this Court found that the evidence was sufficient to establish that the defendant had the requisite knowledge of his accomplices’ intent to commit an armed robbery to support his conviction as a principal to second degree murder. The evidence at trial showed that the defendant was with his accomplices several hours before the murder and that a robbery was mentioned several times. Further, the defendant drove his accomplices to the scene, waited for them, and helped them escape. The defendant did not attempt to call the police or aid the victim, but instead, he fled to another state.
In State v. Lewis, 917 So.2d at 591, this Court found the evidence was sufficient to support the defendant’s conviction of second degree murder under the felony murder doctrine as a principal. This Court relied on the facts that the defendant was at the murder scene with a gun, that he did nothing to prevent the crime, that he fled the scene rather than rendering assistance after the victim was shot, and that he did not attempt to report the shooting.
Also, in State v. Hill, 98-1087 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 696-697, unit denied, 99-2848 (La.3/24/00), 758 So.2d 147, this Court upheld the defendant’s second degree murder conviction after the jury determined he was a principal to the crime of attempted armed robbery. This Court noted that the defendant chose to remain with the co-defendant at the murder scene, with knowledge, by his own admission, that his co-defendant planned to rob the victim; the defendant did nothing to prevent the crime; and the defendant did not come to the victim’s aid after the shooting, but rather fled the scene.
In the instant case, after the defendant learned of his accomplices’ intention to rob the victim, he did not leave and he did nothing to prevent the robbery. In fact, to the contrary, he was integral in its commission. While his accomplices engaged the victim, the defendant searched the vehicle for anything of value and once the victim was shot, he did not attempt to render assistance. Instead, he drove the victim’s vehicle away and abandoned it in a secluded wooded area. Consistent with the cited cases, we find that this evidence was sufficient for the jury to conclude that the defendant was at least a principal to the second degree murder of the victim.
Based on the foregoing, we find that the evidence in this case, when considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of conspiracy to commit an armed robbery and second degree murder.

EXCESSIVE SENTENCE

In his second assignment of error, the defendant challenges the sentences imposed as excessive.
hiiOn November 8, 2011, the trial court sentenced the defendant to forty years at hard labor for conspiracy to commit armed robbery,[5] and to the mandatory term of life imprisonment at hard labor for second degree murder. The sentences were imposed without benefit of parole, probation, or suspension, and they were ordered to run consecutively. The defendant’s appellate counsel now argues that these sentences are excessive because they were ordered to be served consecutively. Counsel recognizes that this argument is “of *625 little consequence” since the defendant received a life sentence on the second count; however, counsel claims that the sentence is “on principle excessive and smacks of ‘dog-piling’ a sentence.”
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 839 So.2d at 4. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130.
In the instant case, the defendant does not contend that either sentence on its own is excessive and recognizes that the life sentence imposed for second degree |14murder is statutorily mandated. However, the defendant’s appellate counsel contends that the consecutive nature of the sentences render them excessive.
LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
A trial judge retains discretion to impose consecutive sentences on the basis of factors such as the offender’s past criminal acts, the violent nature of the charged offenses, or the risk that the defendant may pose to the safety of the community. If the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. Although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. State v. Miller, 11-498 (La.App. 5 Cir. 12/13/11), 84 So.3d 611, 620-621.
In the instant case, the trial judge provided reasons for the consecutive sentences:
The reasons for imposing these consecutive sentences are as follows: Number one, your conduct during the commission of the offense demonstrated a cold, calculated callousness toward the victim. Two, you knowingly created a risk of death or great bodily harm to the victim. Three, a dangerous weapon was certainly used in the commission of the offenses, and; [fjourth, your apparent lack of remorse.
In imposing the consecutive sentences, the trial court noted that the defendant’s conduct during the commission of the offense showed a cold, 11ficalculated callousness toward the victim, that the defendant *626 knowingly created a risk of death or great bodily harm to the victim, that a dangerous weapon was used in the commission of the offenses, and that the defendant displayed no remorse. We additionally note the defendant’s role in the instant offense. The evidence at trial makes clear that the defendant knowingly participated in the robbery of the victim. Once aware of his accomplices’ intention to rob the unsuspecting victim, he lay in wait with them. When the victim arrived, Turner and Meredith accosted the victim while the defendant searched his car. After the victim was shot, the defendant fled in the victim’s car and abandoned it in a secluded area. Further, the record reflects that in addition to the instant offenses, the defendant had also been charged with six first class felonies. Thus, considering the trial court’s reasons for the imposition of consecutive sentences, the circumstances surrounding the offense, including the defendant’s brazen disregard for the victim, and the defendant’s criminal history, we find that the sentences imposed, even though consecutive in nature, are not constitutionally excessive. See State v. Walker, 02-495 (La.App. 5 Cir. 11/13/02), 883 So.2d 367, 372-73, writ denied, 02-3066 (La.4/25/03), 842 So.2d 397.
Moreover, we note that consecutive sentences have routinely been imposed and upheld in cases where the offenses have arisen from the same course of conduct. In fact, the exact same sentences were imposed on co-defendant, Jeremy Turner. In State v. Turner, 11-870 (La.App. 5 Cir. 3/27/12), 91 So.3d 426, the trial court sentenced the defendant to consecutive terms of forty years at hard labor without benefits for conspiracy to commit armed robbery and life imprisonment without benefits for second degree murder. Although Turner did not challenge his sentences on appeal, this Court affirmed his convictions and sentences.
In State v. Zeno, 742 So.2d at 702, the defendant was convicted of armed robbery and conspiracy to commit armed robbery and was sentenced to consecutive terms of ninety-nine years and forty-nine years and six months at hard labor without benefits, respectively. After the defendant was found to be a third felony offender, the trial court vacated his sentence on the armed robbery conviction, imposed an enhanced sentence of life imprisonment at hard labor without benefits, and ordered it to run consecutively with the conspiracy sentence. On appeal, the defendant argued the consecutive sentences were excessive because the trial judge failed to justify the need for consecutive sentences. This Court found that the trial court did not abuse its discretion in imposing consecutive sentences even though the offenses were part of the same transaction. Although the trial judge failed to specifically state reasons for imposing consecutive sentences at either the original or the enhanced sentencing, the trial judge’s reasons at the original sentencing indicated that she considered the violent nature of crime when imposing consecutive, maximum sentences.
Likewise, in State v. Barnett, 46,303 (La.App. 2 Cir. 5/18/11), 70 So.3d 1, writ denied, 11-1612 (La.4/13/12), 85 So.3d 1239, and State v. Wood, 08-1511 (La.App. 3 Cir. 6/3/09), 11 So.3d 701, the courts found that the consecutive sentences were not constitutionally excessive even though the crimes arose from a single course of conduct.
Moreover, even if the trial judge erred in imposing consecutive rather than concurrent sentences, the error was harmless in light of the fact that the defendant was sentenced, on the second degree murder conviction, to the mandatory term of life imprisonment without benefit of pa *627 role, probation, or suspension. See State v. Puckett, 02-997 (La.App. 5 Cir. 1/28/03), 839 So.2d 226, 234, writ denied, 03-891 (La.12/12/03), 860 So.2d 1148.
| ^Accordingly, the arguments raised by the defendant in this assigned error are without merit.

ERROR PATENT REVIEW

We have reviewed the record for errors patent according to LSA-C.Cr.P. art. 920. Our review reveals that the trial court failed to observe the twenty-four hour delay between denying the defendant’s motions for new trial and post-verdict judgment of acquittal and imposing the defendant’s sentences. LSA-C.Cr.P. art. 873 sets forth the time delay between conviction and sentence and reads as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the instant case, the defendant did not waive the mandatory, statutory delay between the trial judge’s rulings on his motions and his sentencing. However, we find, under the circumstances presented herein, that any failure to observe the mandatory delay can be deemed harmless.
In State v. Williams, 09-48 (LaApp. 5 Cir. 10/27/09), 28 So.3d 357, 369, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860, this Court found that a defendant was not prejudiced by the failure to observe the delay because the trial judge was required to impose a mandatory sentence of life imprisonment at hard labor for the defendant’s conviction of second degree murder. Thus, this Court determined that the failure to delay sentencing could be deemed harmless.
Likewise, in the instant case, the defendant received a mandatory life sentence for the second degree murder conviction. As in State v.Williams, supra, the defendant has not suffered prejudice from the trial court’s failure to observe the 11smandatory delay; thus, this error can be deemed harmless, and no corrective action is warranted.
Accordingly, for the reasons set forth herein, we affirm the defendant’s convictions and sentences.

CONVICTIONS AND SENTENCES AFFIRMED

. Danarius Meredith and Jeremy Turner were also charged in the indictment. On February 23, 2011, the State severed the trials of the defendants.

. At trial, Detective Beavers testified that he was familiar with that area as being a dump site for stolen vehicles.

. Mr. Ray Clark, a custodian of records for Sprint, testified at trial that on January 2, 2010, at 9:39 p.m., 9:40 p.m., 9:41 p.m., and 10:14 p.m., phone calls were placed from the phone registered to Jeremy Turner to the phone registered to the victim.

. The transcript seems to indicate that this person was "B.J.” (Bryant Payne) and that *621 the victim owed him something. In his second statement to police, which only involved a photographic lineup, the defendant identified Bryant Payne. However, according to Detective Beavers, there was no one who could substantiate B.J.’s involvement in the crime.

. Pursuant to LSA-R.S. 14:26 and 14:64, the sentencing range on the conspiracy conviction was ten to forty-nine and one-half years.