SUSAN M. CHEHARDY, Judge.
|2On February 26, 2009, a Jefferson Parish Grand Jury indicted defendant, Jose Cornejo-Garcia, and four co-defendants[1] on four counts of second degree murder, in violation of La. R.S. 14:30.1, for the homicides of Wallace Gomez, Beauford Gomez, Jeffrey Carmadelle, and Wayne Hebert. On March 22, 2010, the State agreed to sever the trials of the five defendants. That day, the trial court also granted defendants’ motions to quash count two of the indictment with respect to the homicide of Beauford Gomez.[2]
On November 16, 2010, trial commenced. The next day, a twelve-person jury returned a unanimous verdict of guilty as charged on all counts. On November 23, 2010, the trial court sentenced defendant to three consecutive sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On November 30, 2010, the trial court denied defendant’s motion to reconsider sentence and granted his motion for appeal.

Facts

IsAround 2:00 p.m. on Thursday, October 30, 2008, five Hispanic males entered Gomez’s Bar on Fourth Street in Marrero, Louisiana. They ordered drinks from the bar then moved towards the pool tables. Moments later, however, these men, brandishing firearms, corralled the bar patrons near the back of the barroom and told everyone to empty their pockets. As Wallace Gomez, one of the bar’s owners, came out from the back room of the bar in response to the commotion, one of the gunmen, later identified as Renel Esco-bar-Rivera, grabbed him, put a .357 magnum to his head, and forced him back into *461 the office.[3]
Stanley Gomez, Wallace’s brother and the bar’s co-owner, who had been behind the bar before the men entered, tried to go into a rear storeroom but was quickly forced back into the bar by one of the gunman. Stanley watched as the gunman, later identified as Mario Funes, opened the bar’s cash register and dropped the cash drawer on the floor. The other three men were busy pilfering the bar patrons’ wallets, currency, cellular phones, and other property.
A few minutes later, Escobar-Rivera came running out with a bag in his hand shouting in Spanish. In response to his shouts, all of the robbers except Mario Funes fled the bar.
Wallace, now armed, emerged from the back room in pursuit of the robbers. One of the patrons alerted Wallace that one of the men was still behind the bar. When Funes emerged, Wallace confronted him, asking, “Are you one of them?” The armed man did not respond.
Although there is conflicting testimony as to who fired first, it is uncontroverted that, at that point, Wallace and Funes exchanged gunfire.[4] During |4this exchange, seventy-six-year-old Wallace and seventy-year-old Beauford Gomez, a third Gomez brother, who had been seated at the bar, were shot and mortally wounded. Funes also sustained a gunshot wound.
When they heard the gunfire, two of the robbers, who had already exited the bar, ran back in firing their weapons and dragged their wounded accomplice outside. During this exchange, two bar patrons— Jeffrey Carmadelle and Wayne Hebert— were shot.
Just as the three robbers made it to the parking lot, Detective Rhonda Goff of the Jefferson Parish Sheriffs Office drove by in her marked patrol car on her way to work. As she passed Gomez’s, she saw three Hispanic men covered in blood standing right outside of the front door of the bar. Two of the men, later identified as defendant herein and Rigoberto Funes, were carrying a third man, Mario Funes, who was injured.[5] When she first spotted the men, they were facing east towards her but they abruptly turned to cut across a field away from her.
Detective Goff testified that she immediately thought that the situation was odd when the men did not attempt to signal her — a police officer — for help. After she stopped the men to investigate, several bar patrons approached to inform her that the men had just killed four people. Detective Goff quickly handcuffed the two uninjured men and called for backup. At trial, Detective Goff identified defendant herein as one of the men who was carrying his wounded accomplice.
In the meantime, two of the gunmen, later identified as Pedro Navarette-Duran and Renel Escobar-Rivera, fled the , scene *462 in their vehicle.[6] However, Charles Hen-ning, who had just pulled into the parking lot as the robbers were |sfleeing the bar, wrote down the vehicle’s license plate number and gave it to Detective Goff.
Deputies and paramedics testified that, when they entered the bar, “there was blood and money everywhere.” Wallace and Beauford Gomez were pronounced dead at the scene by the authorities. The two bar patrons, Jeffrey Carmadelle and Wayne Hebert, were transported to a hospital where they were pronounced dead on arrival. The injured suspect was transported for medical treatment then arrested upon release from the hospital.
After hearing the testimony and evidence, the twelve-person jury found this defendant guilty as charged on all three counts. This appeal follows.

ANALYSIS:

On appeal, defendant raises two assignments of error: first, the trial court erroneously denied his request for special jury instructions[7] and, second, his consecutive sentences are excessive.
With respect to his first assigned error, defendant contends that the trial judge erred in denying two special jury instructions. The first instruction was an exception to the rule that an aggressor cannot claim the right of self-defense, which provides that an aggressor may claim self-defense if “he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.” La. R.S. 14:21. The second instruction addresses the permissibility of the use of deadly force to prevent the commission of a crime:
Two things must concur in order to justify us in killing another to prevent him from committing some act: first, it must reasonably appear necessary in order to prevent him from committing a crime; and second, the crime to be prevented must be a great crime, and not a petty offense from which no great injury would result to us or others, 16in body or property. Therefore, if it reasonably appears that the crime can be prevented by any other available means, as by a warning, by a show of force, or by the use of any force short of killing, the killing would not be justified.
State v. Plumlee, 177 La. 687, 149 So. 425, 428-29 (1933).
In its reply, the State asserts that the trial court was correct in its determination that the facts did not support the requested instructions.
La.C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. State v. Batiste, 06-824, p. 14 (La.App. 5 Cir. 3/13/07), 956 So.2d 626, 636, unit denied, 07-0892 (La.1/25/08), 973 So.2d 751. The trial court is required to charge the jury on the law applicable to any theory of defense, when properly requested, which the jurors could reasonably infer from the evidence. Id.
La.C.Cr.P. art. 807 mandates that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly pertinent and correct. Id. The evidence presented at trial must sup *463 port the requested special charge. Id. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Lawson, 08-123, p. 15 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527.
Turning to the first jury instruction, La. R.S. 14:21 provides: “A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.” See State v. Patterson, 10-415, p. 12 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 149, writ denied, 11-0338 (La.6/17/11), 63 So.3d 1037. In cases where the |7defendant is engaged in an armed robbery and claims self-defense, Louisiana courts have found La. R.S. 14:21 inapplicable. For instance, in State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1336, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), the Louisiana Supreme Court found that because the defendant brought on the difficulty by engaging in an armed robbery at the time of the shooting, he could not claim the right of self-defense. Similarly, the Second Circuit found that regardless of conflicting testimony regarding who fired the first shot, because the defendant was engaged in an armed robbery at the time of the shooting, he was unquestionably the aggressor and had no right to claim self-defense. State v. Hopkins, 34,119, pp. 7-8 (La.App. 2 Cir. 12/20/00), 774 So.2d 1178, 1183.
In the instant case, defendant contends that he retreated from the barroom, which signaled his desire to withdraw from the conflict. He contends that he only reentered the bar after Wallace Gomez fired his weapon in order to defend his friend, Mario Funes. We find no merit in defendant’s argument.
Defendant’s argument ignores his actions that led to Wallace Gomez arming himself. Defendant and his four armed accomplices entered Gomez’s Bar on October 30, 2008 intending to rob the bar and patrons; as such, they were the initial aggressors and, pursuant to Scales and Hopkins, have no right to claim self-defense. Further, defendant was not even in the bar when Wallace fired his weapon so the facts do not suggest that he was in imminent danger of losing his life or receiving great bodily harm. La. R.S. 14:20. Upon review, we find that the trial court did not commit reversible error in declining the requested jury instruction.
Turning to the second jury instruction, defendant contends that Wallace Gomez was not justified in defending his bar with deadly force. Defendant relies |8on State v. Plumlee, 177 La. 687, 149 So. 425, 429 (1933), in which the Louisiana Supreme Court recognized that one does not have the right to take human life directly or indirectly to prevent trespass or other petty crime.[8] Again, we find no merit in defendant’s argument.
First, defendant was not present for, not involved in, nor a witness to any use of force by Wallace Gomez. Thus, the determination of whether Wallace was justified in his use of force is not relevant to defendant’s case.
*464 Second, even if defendant had the right to question the use of force by Wallace Gomez, Louisiana law permits the use of deadly force to prevent the commission of a violent or forcible felony carrying the risk of death or of great bodily harm directed against the person. State v. Deshotel, 96-0778 (La.5/31/96), 674 So.2d 260 (per curiam) (citations omitted); La. R.S. 14:20. Here, Wallace and his customers were robbed at gunpoint by multiple gunmen, which created a substantial risk of death or great bodily harm to each of them. We find that the trial court did not commit reversible error in declining to allow this special jury charge. Defendant’s first assignment of error lacks merit.
In his second assignment of error, defendant argues that his consecutive sentences are excessive because imposition of a sentence for a term beyond natural life makes no contribution to the acceptable goals of punishment and constitutes a purposeless and needless imposition of pain and suffering.[9] Defendant also claims that the trial court failed to specify reasons for the consecutive nature of the sentences. In response, the State points out that, before his sentencing, defendant did not seek a Dorthey deviation[10] of his legislatively-mandated minimum | sentences, nor has he shown that said deviation is warranted[11] in this case so this issue is moot. Notwithstanding this claim of mootness, the State still argues that the trial judge’s specified reasons for imposing the three consecutive sentences make clear that he did not abuse his discretion.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A sentence can be reviewed for constitutional excessiveness even if it is within statutory limits. Smith, supra. Second degree murder carries a mandatory life sentence. La. R.S. 14:30.1. A mandatory minimum sentence is presumed constitutional. State v. Royal, 03-439, p. 12 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied, 03-3172 (La.3/19/04), 869 So.2d 849. Further, Louisiana courts have consistently held that a mandatory *465 sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. See State v. Lovick, 00-1833, p. 15 (La.App. 5 Cir. 5/16/01), 788 So.2d 565, 573, writ denied, 01-1836 (La. 5/10/02), 815 So.2d 833; State v. Hill, 98-1087, p. 15 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 698-99, writ denied, 99-2848 (La.3/24/00),\10758 So.2d 147(mandatory life sentence for second-degree murder not excessive even when the offender is a juvenile).
When imposing a sentence, a trial judge has broad discretion and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. Plus, if the record supports the sentence imposed, the appellate court shall not set it aside for excessiveness. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id., 07-332 at 15-16, 975 So.2d at 656.
Louisiana law favors concurrent sentences for crimes committed as part of a single transaction. La.C.Cr.P. art. 883; State v. Underwood, 353 So.2d 1013, 1019 (La.1977). A trial judge, however, retains discretion to impose consecutive penalties on the basis of other factors, including the offender’s past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community. State v. Thomas, 91-1144 (La.10/9/98), 719 So.2d 49 (per curiam) (citations omitted).
Additionally, if the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary. State v. Blanchard, 03-0612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 664. The failure to articulate specific reasons for imposing consecutive sentences does not, however, require remand if the record provides an adequate factual basis to support the consecutive sentences. Id.
Inin the instant case, when the trial judge sentenced the defendant, he articulated the following reasons for imposing consecutive terms:
Mr. Garcia, I sat through your trial, sir. And the testimony that I focus on today is your very own statement wherein you cooperated with law enforcement authorities. And in that statement it was abundantly clear to the Court that you came to the metro New Orleans area for the purpose of not only participating in a band, or playing a musical instrument, or entertainment of some sort, but, also, for the purpose of committing an armed robbery. That was the discussion that occurred in the car. And those are from your own words.
The crime for which you have been convicted is three counts of second degree murder. And, as I’ve told your previous [cojdefendants at their sentencing hearings, and I will say to you, that the value of human life is precious. And three lives were lost that day for which you were tried.
My only discretion is whether to run these sentences concurrent or consecutive with one another. And, from my point of view, running them concurrent would do an injustice to the lives that were lost that day.
*466 As Mr. Wilner and Mr. Wallace argued to the jury — and I listened with a keen ear — in for a penny in for a pound is what I heard repeatedly in argument. And everyone had a role, you in particular. Without the driver, you folks would not have been able to get to the bar; without the weapons, you would not have been able to commit the armed robbery. And, from your participation, you actually removed personal items, whether they be watches, wallets, keys, cell phones from the victims. You gathered those. You were critical. You were part of a team. And from my perspective, you’re as culpable as all the rest.
For those reason[s], on each count of second degree murder, I sentence you to life imprisonment at hard labor in the custody of the Department of Corrections without the benefit of parole, probation, or suspension of sentence.
Those three sentences are to run consecutive to one another.
Here, the trial judge imposed consecutive sentences based upon the facts that defendant and his four accomplices premeditated an armed robbery using firearms, which resulted in four deaths. Furthermore, the record reflects that defendant’s actions were particularly heinous because he had retreated from the bar without inflicting any serious injury then re-entered the bar and discharged his weapon in defense of his cohort. The testimony reflects that only defendant and his accomplice, Rigoberto Funes, fired weapons during this second volley of gunfire. | ^More importantly, the evidence reflects that Jeffrey Carmadelle and Wayne Hebert were both killed during this onslaught. If defendant had not reentered the bar, two deaths might have been avoided.
Finally, Louisiana jurisprudence supports the trial judge’s decision to impose consecutive sentences. See, State v. Bibb, 626 So.2d 913, 940 (La.App. 5 Cir.1993), writ denied, 642 So.2d 188 (La.l994)(two consecutive life sentences for two counts of first degree murder not constitutionally excessive for defendant that murdered his five-year-old son and his two-year-old daughter); State v. Wood, 08-1511, pp. 18-24 (La.App. 3 Cir. 6/3/09), 11 So.3d 701, 711-16 (three consecutive life sentences for three counts of second degree murder not constitutionally excessive); and State v. Smith, 44,998, pp. 17-19 (La.App. 2 Cir. 3/31/10), 34 So.3d 386, 396-97, writ denied, 10-0980 (La.12/10/10), 51 So.3d 722 (two consecutive life sentences for two counts of second degree murder not constitutionally excessive for recidivist defendant convicted of ambush murder of two police officers).
In the instant case, given the gravity of defendant’s offense, the articulated reasons by the trial judge, and the supporting jurisprudence, we find no abuse of the trial court’s discretion in imposing three consecutive life sentences. This assignment of error has no merit.
Finally, pursuant to our routine practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. We note that defendant received an incomplete advisal of the time period within which he is allowed to apply for post-conviction relief. By way of this opinion, we advise defendant that, under La. C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the |13provisions of La.C.Cr.P. arts. 914 or 922. See State v. Ramsey, 10-333, p. 10 (La. App. 5 Cir. 1/25/11), 60 So.3d 36, 42; State v. Davenport, 08-463, p. 10-11 (La.App. 5 *467 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 10 So.3d 473. In all respects, defendant’s convictions and sentences are affirmed.

AFFIRMED

. The four co-defendants are Mario A. Funes, Rigoberto Funes, Pedro A. Navarette-Duran, and Renel D. Escobar-Rivera.

. The trial judge quashed the indictment against the co-defendants for Beauford Gomez's murder after ballistics determined that Beauford Gomez was killed by a bullet fired from Wallace Gomez’s gun.

. Gomez's Bar cashed checks often for regular patrons of the bar. The money was kept in three safes in the back room of the bar, referred to as the office.

. Stanley Gomez testified: ‘T don’t know who shot first, but that's when the shooting started.” One eyewitness, Keith Cummings, testified: "Mr. Wallace shot him and the dude shot Mr. Wallace, and they kept shooting each other multiple times, toe to toe.” Another eyewitness, Earl Scioneaux, testified: "And then when Wallace asked him that, he turned, lifted his pistol. When he lifted his pistol, that's when Wallace shot him.” On cross-examination, Mr. Scioneaux conceded that his statement to the police did not include an assertion that the gunman raised his weapon first.

.Mario and Rigoberto Funes are brothers.

. These two individuals, Pedro Navarette-Du-ran and Renel Escobar-Rivera, were apprehended a week later in Houston and San Antonio, Texas, respectively.

. Prior to trial, on November 15, 2010, the defense sought special jury instructions. On November 17, 2010, the trial court denied defense counsel’s request for the special jury instructions.

. In Plumlee, the victim was killed by means of a spring gun set by the defendant to protect his chicken coop. Id., 149 So. at 427.

. In his motion to reconsider sentence, defendant argued his consecutive sentences were excessive because all counts occurred during a single episode, but the trial court denied that motion.

. At a defendant’s request, a trial court may reduce a presumptively constitutional sentence if it determines the sentence makes no "measurable contribution to acceptable goals of punishment” or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering” and is "grossly out of proportion to the severity of the crime” as applied to a particular defendant. State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993).

.When a defendant seeks a downward deviation from the mandatory sentence, he has the burden to rebut the presumption of constitutionality by showing by clear and convincing evidence that he is exceptional, namely that he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. State v. Berniard, 03-484, p. 13 (La.App. 5 Cir. 10/15/03), 860 So.2d 66, 75, writ denied, 03-3210 (La.3/26/04), 871 So.2d 345.