**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 1337

STATE OF LOUISIANA

VERSUS

JERRELL ALEXANDER

Judgment Rendered: OCT 1 8 2021

* * * * *

On Appeal from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Trial Court No. 583000

Honorable F. Hugh Larose, Judge Presiding

* * * * *

Cynthia K. Meyer
New Orleans, LA

Attorney for Defendant-Appellant,
Jerrell Alexander

Kristine M. Russell
District Attorney
Shaun-Philip George
Assistant District Attorney
Thibodaux, LA

Attorneys for Appellee,
State of Louisiana

* * * * *

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**HESTER, J.**

The defendant, Jerrell Alexander, was charged by grand jury indictment with two counts of second degree murder, violations of La. R.S. 14:30.1, and pled not guilty on both counts. Following a jury trial, he was found guilty as charged by unanimous verdicts on both counts. He was sentenced to consecutive terms of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He moved for reconsideration of sentence, but the motion was denied. He also filed an untimely motion for new trial which was denied. See La. Code Crim. P. art. 853(A). The defendant now appeals raising four assignments of error. For the following reasons, we affirm the convictions and sentences.

## FACTS

On December 15, 2018, Trevor Smith was playing pool with the victims, Jeremiah Ballard and Marcel Turner, in the garage of a home on Market Street in Lafourche Parish. During the early afternoon, the defendant and his brother Kerry "Razor" Alexander entered the garage wearing camouflage masks and waving handguns. Smith was familiar with the defendant and Kerry Alexander because he had previously seen them when he went to buy sweets and drinks from their mother, who sold those items two streets over from where Smith lived. Smith was able to see the faces of the defendant and Kerry Alexander through openings in the masks. Smith saw Kerry Alexander "cock[] ... back [his gun]" and heard him say, "Give it up." Smith then ran from the garage. As he ran through the house, he heard "a little bit more than five" shots fired.

Ballard and Turner were killed in the gunfire. Ballard suffered a potentially fatal wound to the left side of his chest, a fatal wound to his back, and a wound to his right arm. Turner suffered a fatal wound to the left side of his back.

2

The defendant testified at trial. He had prior convictions for armed robbery and attempted second degree murder. He denied going to the scene of the crime. He implicated Kerry Alexander and Justin Boudreaux in the crimes.

## RIGHT TO FAIR TRIAL

In assignment of error number 1, the defendant contends two trial court rulings violated his constitutional right to a fair trial. First, the defendant argues the trial court erred in refusing to allow him to cross-examine Trevor Smith with a photo line-up prepared by defense counsel. Second, the defendant argues the trial court erred in accepting St. Tammany Parish Crime Laboratory Lieutenant Jodie Clements as an expert in gunshot residue analysis.

## DEFENSE PHOTO LINE-UP

A criminal defendant's right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, §16 of the Louisiana Constitution. Evidentiary rules may not supersede the fundamental right to present a defense. See U.S. Const. amend. VI; La. Const. art. I, § 16; **State v. Van Winkle**, 94-0947 (La. 6/30/95), 658 So.2d 198, 202. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value can be admitted. See **State v. Governor**, 331 So.2d 443, 449 (La. 1976). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403. Ultimately, questions of relevancy and admissibility of evidence are discretion calls for the district court. Such determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. See **State v. Mosby**, 595 So.2d 1135, 1139 (La. 1992); **State v. Bridges**, 2014-0777 (La. App. 1st Cir. 3/6/15), 2015 WL 997162, *4 (unpublished), writ denied, 2015-0675 (La. 2/26/16), 187 So.3d 467.

3

During the cross-examination of Smith, defense counsel asked whether Smith would be able to identify the parties in the shooting if presented with another photographic lineup. Smith answered affirmatively. Thereafter, at an on-the-record bench conference, the trial court stated, "[n]ot in my courtroom." The trial court asked defense counsel to provide a factual basis and explain the relevancy of showing Smith a new lineup. Counsel replied, "[t]he relevance is that this witness has testified that he chose two people on the initial lineup. He also testified that he only saw the eyes …." The trial court interrupted defense counsel, stating "[o]nly one is relevant. [It] [i]s the one that is used to identify. You cannot impeach his testimony by attempting to fabricate another lineup. It's not the same line. It's not under the same circumstances and not at the same time. I'm not allowing it unless you got a case that says to the contrary." Defense counsel responded that he did not have any such case. The trial court also asked defense counsel if he had a statute or "[a]nything" that would allow admission of the new lineup, but defense counsel answered negatively.

The new lineup was prepared by the "staff" of defense counsel. Defense counsel described the new lineup as "just what the witness saw. Not the whole facial features. Just the cut out of the eyes[.]" The trial court found that "[t]his is an absolute recreation without any control, without being able to subject it to any testing. It was completely designed by [defense counsel's] staff on some kind of Photoshop deal and that has no relevancy to the hearing today, and I will absolutely not allow it." Defense counsel objected to the ruling and was given permission to proffer the new lineup.

There was no clear abuse of discretion in the ruling excluding the new lineup. The probative value, if any, of the new lineup was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay and waste of time. Defense counsel claimed the new

lineup had probative value because it was "[j]ust the cut out of the eyes" and was "just what the witness saw." Smith, however, testified that although the gunmen wore masks under their eyes, he "[could] see through [the masks]" because the masks had "openings." He indicated he could see identifying features through the masks. He also indicated he had seen the defendant "several times" before the incident and identified him as one of the gunmen based on his body build, and "how he acts, mannerisms." See **State v. Duncan**, 99-2615 (La. 10/16/01), 802 So.2d 533, 556, cert. denied, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 183 ("[In contrast to true illustrations,] replications of an original event ... are admissible only if a similarity requirement is satisfied. That is, the replication must be conducted under substantially similar circumstances.").

This portion of this assignment of error is without merit.

## QUALIFICATION OF EXPERT

Louisiana Code of Evidence article 702 addresses the admissibility of expert testimony and, in pertinent part, provides:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

A determination regarding the competency of a witness is a question of fact. It is well settled that a trial judge is vested with wide discretion in determining questions of fact. Therefore, rulings on the qualifications of an expert witness will not be disturbed on appeal absent manifest error. **State v. Young**, 2009-1177 (La.

5

4/5/10), 35 So.3d 1042, 1046, cert. denied, 562 U.S. 1044, 131 S.Ct. 597, 178 L.Ed.2d 434 (2010).

The State offered Lieutenant Clements as an expert in the field of primer gunshot residue testing. She earned a bachelor's degree in forensic chemistry from Loyola University and a master's degree in criminal justice administration. At the time of the trial, she had been with the St. Tammany Parish Sheriff's Office Crime Lab for six years and was assistant lab director, the quality manager, and a primer gunshot residue analyst.

In regard to primer gunshot residue, Lieutenant Clements had been certified by the St. Tammany Parish Sheriff's Office Crime Lab to analyze gunshot residue after completing an "intensive training program." The nine-month long training program had knowledge-based components and practical exercises. Lieutenant Clements worked under a field training officer in the program and had to pass a competency test to complete the program. In order to pass the competency test, Lieutenant Clements had to be 100% accurate when testing unknown samples containing positives and negatives. During the training program, Lieutenant Clements completed "twenty cases total [of] partially observe[d] and partially supervise[d] casework." Following the training program, Lieutenant Clements had completed thirty cases for her agency.

Lieutenant Clements indicated she had completed her training program on May 24, 2019, and had never previously been either offered or been qualified as an expert in the field of primer gunshot residue testing. Defense counsel objected to Lieutenant Clements being qualified as an expert "for the reasons that she's never testified before, never been certified before, and is – has not been doing this even a year, yet." The trial court ruled, "based upon [Lieutenant Clements's] training, her stated certification, and other things[,] that she is qualified in fact to give opinion testimony as an expert in the gunshot residue analysis."

6

At trial, Lieutenant Clements testified she analyzed potential gunshot residue in the instant case. She indicated primer gunshot residue is formed when a firing pin hits the back of ammunition – the primer cap. There is then a small explosion in the firearm and the particles that are in the primer are heated up and melded together. Those particles then rapidly cool as they exit the firearm and fall to the surfaces or people in the vicinity. Gunshot residue analysis looks for those particles, i.e., antimonium, barium, and lead, that have melded together. The analysis also looks for the specific shape of the melding event.

In regard to the gunshot residue kit performed on the defendant, Lieutenant Clements identified two gunshot residue particles taken from the back of his left hand. In regard to the gunshot residue kit performed on Kerry Alexander, Lieutenant Clements identified four gunshot residue particles. Lieutenant Clements indicated that when less than four gunshot residue particles were identified in a sample, it was considered to be of limited evidentiary value because "[i]f you are an individual or someone who fires a lot of firearms on a regular basis, it's possible that you would be a person that might have one particle on you in a typical collection. So at that point to be perfectly clear about the importance of the number of particles on the hand, we included that statement so those factors can be taken into account when interpreting the results."

There was no manifest error in the trial court's ruling. Lieutenant Clements had scientific, technical, or other specialized knowledge that would help the jury in understanding the evidence concerning gunshot residue and was qualified as an expert by her knowledge, skill, experience, training, or education to testify thereto in the form of an opinion or otherwise. Her testimony was based on sufficient facts or data; was the product of reliable principles and methods; and she had reliably applied the principles and methods to the case. See La. Code Evid. art. 702(A).

This portion of this assignment of error is also without merit.

## JURY CHARGE

In assignment of error number 2, the defendant contends the trial court erred in charging the jury as to the elements of the responsive verdict of manslaughter. He argues the language regarding unauthorized entry of an inhabited dwelling was neither pertinent to the case nor supported by the evidence because the victims and the defendant grew up in the same neighborhood and the garage where the shooting occurred was a gathering place for the victims and their friends.

Louisiana Revised Statutes 14:31, in pertinent part, provides:

> A. Manslaughter is:
>
> . . .
>
> (2) A homicide committed, without any intent to cause death or great bodily harm.
>
> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person[.]

The trial court charged the jury on manslaughter as follows:

> Because a verdict of guilty of manslaughter is a responsive verdict in this case it is my duty to explain the law as it applies to manslaughter. Manslaughter is the killing of a human being when the defendant has a specific intent to kill or inflict great bodily harm, but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.
>
> Also manslaughter is the killing of a human being when the defendant is engaged in the commission or attempted commission of unauthorized entry of an inhabited dwelling even though there is no intent to kill. [R.S.] 14:62.3(A) of our criminal code provides that unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
>
> Thus, in order to convict the defendant of a manslaughter, you must find under number one that the defendant killed Jeremiah Ballard and/or Marcel Turner, and that the defendant had a specific intent to kill or inflict great bodily harm but that the killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.

8

Or second, the defendant killed Jeremiah Ballard and/or Marcel Turner whether or not he had an intent to kill and that the killing took place while the defendant was engaged in the commission of or attempted commission of unauthorized entry of an inhabited dwelling.

Prior to the charging of the jury, the defense objected to the latter part of the manslaughter jury charge "which basically says any felony or misdemeanor is committed and that person dies as long as it is not a felony enumerated in first-degree murder or second-degree murder." The defense objected to the charge containing a "chosen crime." The defense argued, "[i]f the Court is inclined to say no, I think there should be a single crime chosen as in second-degree murder we've chosen arm[ed] robbery for ease of the jury and not confusion things like that."

The State responded:

[Louisiana Code of Criminal Procedure] 814 does list the responsive verdicts. Manslaughter is one that is included. We are entitled to have the entire manslaughter verdict. If it be a person just charged with manslaughter, the State would pick the enumerated felony not listed in 30.1, and we would charge him as such. Here the Court and the jury has heard all the evidence and unauthorized entry of an inhabited dwelling certainly fits as the underlying felony should manslaughter become a responsive verdict and there is literally case law that says that is perfectly fine.

The trial court overruled the defense objection, noting "by limiting it, it actually puts a higher burden on the State and does not in any way lead the jury to an inconcise [sic] understanding of the law as it applies to the case."

There was no error. Initially, we note "arm[ed] robbery" could not be used in the jury charge concerning La. R.S. 14:31(A)(2)(a) because it is a felony enumerated in La. R.S. 14:30(A)(1) and La. R.S. 14:30.1(A)(2). See La. R.S. 14:31(A)(2)(a) ("[a]ny felony *not* enumerated in Article 30 or 30.1" (emphasis added)). Further, we are not persuaded by the argument that because the victims and the defendant grew up in the same neighborhood, and the garage where the shooting occurred was a gathering place for the victims and their friends, there could be no unauthorized entry of an inhabited dwelling in this case. Whatever the relationship between the

9

victims and the defendant, there was nothing presented at trial to indicate the victims authorized armed gunmen wearing masks to enter the garage to rob and/or kill them. The evidence in this case supported the manslaughter charge provided to the jury, and thus, the trial court properly charged the jury on that offense. See La. Code Crim. P. art. 802(1) ("The court shall charge the jury: (1) [a]s to the law applicable to the case[.]").

This assignment of error is without merit.

## UNCONSTITUTIONALLY EXCESSIVE SENTENCES

In assignment of error number 3, the defendant contends the consecutive life sentences are excessive. He argues the convictions arose from a common scheme that occurred over the span of a few minutes and La. Code Crim. P. art. 883 requires that concurrent sentences must be imposed under these circumstances unless the trial court expressly directs that the sentences are to be served consecutively. Relying on **State v. Cornejo-Garcia**, 2011-619 (La. App. 5th Cir. 1/24/12), 90 So.3d 458, 465, defendant also argues that if a court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary; however, the trial court gave no reasons for imposing consecutive sentences.

Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence

10

imposed should not be set aside as excessive in the absence of manifest abuse of discretion. **State v. Parker**, 2013-1050 (La. App. 1st Cir. 2/20/14), 2014 WL 687992, *2 (unpublished), <u>writ denied</u>, 2014-0631 (La. 10/24/14), 151 So.3d 601, <u>cert. denied</u>, 575 U.S. 941, 135 S.Ct. 1714, 191 L.Ed.2d 687 (2015); **State v. Harper**, 2007-0299 (La. App. 1st Cir. 9/5/07), 970 So.2d 592, 602, <u>writ denied</u>, 2007-1921 (La. 2/15/08), 976 So.2d 173.

The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. **Parker**, 2014 WL 687992 at *2; **Harper**, 970 So.3d at 602.

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. Code Crim. P. art. 883. Thus, La. Code Crim. P. art. 883 specifically excludes from its scope sentences which the court expressly directs to be served consecutively. Furthermore, although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. **Parker**, 2014 WL 687992 at *2.

The pertinent question on appellate review is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. A trial court abuses its discretion only when it contravenes the

11

prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes punishment disproportionate to the offense. In making that determination, we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice. **State v. Colvin**, 2011-1040 (La. 3/13/12), 85 So.3d 663, 667-68 (*per curiam*), cert. denied, 568 U.S. 889, 133 S.Ct. 274, 184 L.Ed.2d 162 (2012). Consecutive sentences are justified when the offender poses an unusual risk to public safety. **State v. Barnett**, 96-2050 (La. App. 1st Cir. 9/23/97), 700 So.2d 1005, 1013.

Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B). In this case, the trial court imposed consecutive sentences of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence and expressly directed that the sentences in this matter were to be served consecutively. Thus, they were beyond the scope of La. Code Crim. P. art. 883. See **Parker**, 2014 WL 687992 at *2.

In regard to the defendant's claim that under **Cornejo-Garcia**, 90 So.3d at 465, "if the trial court elects to impose consecutive sentences for crimes arising from a single course of conduct, it must articulate the reasons it feels the sentence is necessary[,]" we note the next sentence in that decision states, "[t]he failure to articulate specific reasons for imposing consecutive sentences does not, however, require remand if the record provides an adequate factual basis to support the consecutive sentences." At sentencing, the trial court stated, "[i]n preparing for today's sentencing, I reviewed the facts of Article 894.1(B)." Additionally, the record provides a sufficient factual basis for consecutive sentences in this matter.

A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its broad sentencing

12

discretion in imposing the sentences herein. See La. Code Crim. P. art. 894.1(A)(1-3), (B)(1), (B)(5), (B)(6), (B)(9-12). Additionally, the sentences imposed were not grossly disproportionate to the severity of the offenses and thus, were not unconstitutionally excessive.

Consecutive sentences were also warranted in this case because the defendant poses an unusual risk to public safety. See **Barnett**, 700 So.2d at 1013. The defendant, a repeat offender with convictions for armed robbery and attempted second degree murder, was at least a principal, if not the actual gunman, in the brutal killing of two victims in broad daylight.

This assignment of error is without merit.

## DENIAL OF MOTION FOR NEW TRIAL

In assignment of error number 4, the defendant contends the trial court erred in denying the motion for new trial. He argues his right to present a defense was hampered through no fault of his own when a subpoenaed witness failed to appear and a witness who was subject to recall was not available during the defendant's case.

During trial, defense counsel stated he had intended to recall Deputy Christopher Ryan Simmons, who had testified during the State's case-in-chief. Defense counsel claimed the State had indicated that Deputy Simmons would be available by phone call. However, defense counsel indicated that Deputy Simmons was unavailable and could not be called by the defense. The State responded that the trial court previously stated that Deputy Simmons was free to go, but the State added that it could get ahold of him if need be. Nevertheless, the State indicated it had called Deputy Simmons's supervisor and learned he was on a family vacation in Houston.

The trial court asked defense counsel if he had issued a subpoena for Deputy Simmons, and defense counsel answered negatively. The trial court stated that the

13

court reporter had listened to the tape made when Deputy Simmons testified. At the conclusion of Deputy Simmons' testimony, the State commented that he could be reached by phone; the defense made no comment concerning whether or not it desired to call Deputy Simmons; and the trial court told him he was free to go. The trial court ruled, "[a]t that point in time, the witness was obviously not cautioned about being subject to recall and for the record, it is what it is."

Additionally, defense counsel advised the trial court that he had subpoenaed Chase Poindexter and domiciliary service was made on him, but he was not present during trial. Defense counsel stated, "[t]herefore, the Court advised that they wish I not call him in the presence of the jury ... in my case." The trial court stated, "[r]ight." Defense counsel stated he was now calling Deputy Simmons and Poindexter. The trial court stated its only recourse in regard to Poindexter was to issue a notice to him to appear to face contempt, and asked defense counsel if he wanted the trial court to issue such a notice. However, defense counsel stated he was "not requesting a contempt issue."

Following the conviction, the defense moved for a new trial on grounds that the verdicts finding him guilty of two counts of second degree murder would result in an injustice if permitted to stand as they were contrary to the law and the evidence: (1) because there was insufficient evidence to support the convictions; and (2) because there were witnesses who were subpoenaed and unavailable to be called.

At the hearing on the motion defense counsel stated, "[w]e just don't simply believe there was enough evidence based on the testimony that was given to present that [the defendant] was the person who committed the offense." Then defense argued that its "most important point" was that it had been deprived of the right to call back Deputy Simmons who was the first responding deputy to the scene of the incident after the shooting took place. The defense reurged the objection it made at trial concerning the unavailability of Deputy Simmons, arguing:

That, you know, that could have swayed as there were other people in the area and during the trial it was learned there were more people leaving the scene or the area of the scene at the time and we want to re-question that witness about that and he was unavailable. So for that reason, we would ask that a new trial be granted to allow [the defendant] to present his whole case.

The State responded that Deputy Simmons was the first law enforcement officer it called and defense counsel "very aggressively cross-examined him and elicited all the testimony that he needed." The State argued the defense was not prejudiced by the absence of Deputy Simmons for recall because "there was nothing new or anything that happened throughout the trial that would have altered his testimony." The State pointed out it had provided defense counsel with open-file discovery and everything presented throughout the trial was consistent with that discovery.

The trial court denied the motion for new trial. The trial court noted the matter had been tried in front of a jury which had the opportunity to listen to numerous witnesses including Deputy Simmons. The court found, while Deputy Simmons was not available for recall by the defendant, he had testified earlier. The trial court also found, "[Deputy Simmons] had been cross-examined by the defendant's attorney and there was no showing at that time, nor now that there was any additional information to be obtained from the testimony of [Deputy] Simmons."

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such injustice is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. Code Crim. P. art. 851(A). The court, on motion of the defendant, shall grant a new trial whenever the court's ruling on an objection made during the proceedings, shows prejudicial error. See La. Code Crim. P. art. 851(B)(2). The denial of a motion for a new trial is not subject to appellate or supervisory review of the supreme court, except for error of law. See La. Code Crim. P. art. 858. Whether to grant or deny a

15

motion for new trial rests within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent a clear abuse of discretion. **State v. Eason,** 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So.3d 61, 74-75.

There was no clear abuse of discretion in the denial of the motion for a new trial. The defendant failed to show injustice was done by the challenged trial court rulings. The defendant failed to show how he was prejudiced by the unavailability of Deputy Simmons after defense counsel had cross-examined him during the State's case-in-chief. In regard to Poindexter, defense counsel declined the trial court's offer of issuing a notice to him to appear to face contempt. Further, defense counsel failed to set forth how he was prejudiced by the absence of Poindexter.

This assignment of error is without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**